1

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)

2

Brittany S. Scott (State Bar No. 327132)
1990 North California Blvd., Suite 940

3

Walnut Creek, CA 94596
Telephone: (925) 300-4455

4

Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com

5

        bscott@bursor.com

6

**BURSOR & FISHER, P.A.**

7

Scott A. Bursor (State Bar No. 276006)
701 Brickell Ave., Suite 1420

8

Miami, FL 33133
Telephone: (305) 330-5512

9

Facsimile:  (305) 676-9006
E-Mail: scott@bursor.com

10

*Attorneys for Plaintiffs*

11

12

13

**UNITED STATES DISTRICT COURT**

14

**NORTHERN DISTRICT OF CALIFORNIA**

15

16

ANDREA J. KEY, ANNE SPOLLEN and
ANNE F S TALBOT, individually and on behalf

17

of all others similarly situated,

18

                                          Plaintiffs,

19

        v.

20

KENDO HOLDINGS INC. and OLE
HENRIKSEN OF DENMARK, INC.,

21

22

                                          Defendant.

Case No.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

23

24

25

26

27

28

1    Plaintiffs Andrea J. Key, Anne Spollen, and Anne F S Talbot ("Plaintiffs") bring this action
2    on behalf of themselves and all others similarly situated against Defendants Kendo Holdings, Inc.
3    ("Kendo") and Ole Henriksen of Denmark, Inc. ("Ole Henriksen") (collectively, "Defendants") for
4    the manufacture, marketing, and sale of OLEHENRIKSEN Banana Bright Eye Crème.  Plaintiffs
5    make the following allegations pursuant to the investigation of their counsel and based upon
6    information and belief, except as to the allegations pertaining to themselves, which are based on
7    personal knowledge.

8                              **NATURE OF THE ACTION**

9         1.    This is a class action against Defendants Kendo Holdings, Inc. and Ole Henriksen of
10   Denmark, Inc. for the manufacture and sale of OLEHENRIKSEN Banana Bright Eye Crème (the
11   "Product").  Specifically, the Product's defective design causes consumers to experience allergic
12   reactions, including itching, hives, redness, and swelling.  This defect renders the Product virtually
13   useless.

14        2.    OLEHENRIKSEN Banana Bright Eye Crème is one of Defendants' bestselling
15   products, because it promises to help consumers "[w]ake up before you makeup with your favorite
16   under eye brightening cream.  OLEHENRIKSEN Banana Bright eye cream brightens and instantly
17   targets fine lines and wrinkles, delivering age-defying results," and "create[ ] a smooth, well-rested
18   canvas … to improve concealer wear."

19        3.    However, numerous consumers of the Product have experienced severe irritation
20   such as itching, burning, hives, redness, and swelling as described herein.  Even after learning of
21   these numerous consumer complaints, Defendants continued to market the Product without
22   disclosing any of the side effects that may occur when using the Product.  Thus, rather than
23   allowing consumers to decide whether the Product is worth purchasing and using in light of serious
24   and potentially harmful side effects, Defendants decided to conceal those risks in pursuit of profit.

25        4.    On information and belief, Defendants have profited enormously from their false
26   and misleading marketing and labeling of the Product, which retails for approximately $40.00.
27   Plaintiffs, along with the putative class members were harmed because they paid retail price for the
28   Products without knowing the truth about the Product's risks before purchasing them.

5.      Plaintiffs bring claims against Defendants individually and on behalf of a class of all other similarly situated purchasers of the Products for (1) violation of California's Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et. seq.*; (2) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210; (3) unjust enrichment; (4) breach of implied warranty; (5) violation of California's False Advertising Law ("FAL"), Cal. Bus & Prof Code § 17500 *et. seq.*; (6) violation of New York General Business Law § 349; (7) violation of New York General Business Law § 350; and (8) violation of New Jersey's Consumer Fraud Act, N.J.S.A. § 56:8-1 *et. seq.*

**PARTIES**

6.      Plaintiff Andrea J. Key is a California resident who resides in Campbell, California. On February 28, 2019, Ms. Key purchased the Product as part of Defendant's "C Your Best Selfie Brightening Moisturizer & Eye Crème" Set from sephora.com for approximately $24.00.  Before purchasing the Product, Ms. Key reviewed product information, packaging, and images, which did not disclose that the Product could cause itching, hives, redness, or swelling.  Ms. Key understood the Product's packaging, labels, and marketing materials as representations by Defendants that the Product was safe for use and would not have serious and potentially harmful side effects.  Ms. Key also reviewed information about the Product, including the representation that the Product was suitable for use as an "Eye Crème" (the "Crème Claims").  Ms. Key relied on these representations and warranties in deciding to purchase Defendants' Product over comparable products. Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Product on the same terms had she known these representations were not true.  In making her purchase, Ms. Key paid a substantial price premium due to the false and misleading Crème Claims.  However, Ms. Key did not receive the benefit of her bargain, because Defendants' Product in fact, is not suitable for use as an "Eye Crème" as advertised, because it causes severe irritation such as itching, redness, swelling, and hives when applied to the eye area. Ms. Key also understood that in making the sale, her retailer was acting with the knowledge and approval of Defendants and/or as the agent of Defendants.  Ms. Key further understood that each purchase involved a direct transaction between herself and Defendants, because her Product came

with packaging and other materials prepared by Defendants, including representations and warranties regarding the Crème Claims.

7.      After using the Product, Ms. Key experienced severe irritation as well as redness, itchiness, and white bumps around her eyes.  Had Ms. Key been aware of these possible side effects before purchasing the Product, she would not have purchased or used the product. However, Ms. Key remains interested in purchasing a safe eye crème and would consider the Product in the future if Defendants removed any allergenic ingredients.

8.      Plaintiff Anne Spollen is a New York resident who resides in Staten Island, New York.  On or around December 2019, Ms. Spollen purchased the Product from Sephora in Elizabeth, New Jersey for approximately $49.00.  Before purchasing the Product, Ms. Spollen reviewed product information, packaging, and images, which did not disclose that the Product could cause itching, hives, redness, or swelling.  Ms. Spollen understood the Product's packaging, labels, and marketing materials as representations by Defendants that the Product was safe for use and would not have serious and potentially harmful side effects.  Ms. Spollen also reviewed information about the Product, including the representation that the Product was suitable for use as an "Eye Crème." Ms. Spollen relied on these representations and warranties in deciding to purchase Defendants' Product over comparable products.  Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Product on the same terms had she known these representations were not true.  In making her purchase, Ms. Spollen paid a substantial price premium due to the false and misleading Crème Claims.  However, Ms. Spollen did not receive the benefit of her bargain, because Defendants' Product in fact, is not suitable for use as an "Eye Crème" as advertised, because it causes severe irritation such as itching, redness, swelling, and hives when applied to the eye area.  Ms. Spollen also understood that in making the sale, her retailer was acting with the knowledge and approval of Defendants and/or as the agent of Defendants.  Ms. Spollen further understood that each purchase involved a direct transaction between herself and Defendants, because her Product came with packaging and other materials prepared by Defendants, including representations and warranties regarding the Crème Claims.

9.      After using the Product, Ms. Spollen experienced severe stinging and irritation around her eyes.  Had Ms. Spollen been aware of these possible side effects before purchasing the Product, she would not have purchased or used the product.  However, Ms. Spollen remains interested in purchasing a safe eye crème and would consider the Product in the future if Defendants removed any allergenic ingredients.

10.     Plaintiff Anne F S Talbot is a New York resident who resides in Brooklyn, New York.  On or around April 15, 2020, Ms. Talbot purchased the Product from sephora.com for approximately $39.00.  Before purchasing the Product, Ms. Talbot reviewed the product listing, packaging, and images, which did not disclose that the Product could cause itching, hives, redness, or swelling.  Ms. Talbot understood the Product's packaging, labels, and marketing materials as representations by Defendants that the Product was safe for use and would not have serious and potentially harmful side effects.  Ms. Talbot also reviewed information about the Product, including the representation that the Product was suitable for use as an "Eye Crème."  Ms. Talbot relied on these representations and warranties in deciding to purchase Defendants' Product over comparable products.  Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Product on the same terms had she known these representations were not true.  In making her purchase, Ms. Talbot paid a substantial price premium due to the false and misleading Crème Claims.  However, Ms. Talbot did not receive the benefit of her bargain, because Defendants' Product in fact, is not suitable for use as an "Eye Crème" as advertised, because it causes irritation such as itching, redness, swelling, and hives when applied to the eye area.  Ms. Talbot also understood that in making the sale, her retailer was acting with the knowledge and approval of Defendants and/or as the agent of Defendants.  Ms. Talbot further understood that each purchase involved a direct transaction between herself and Defendants, because her Product came with packaging and other materials prepared by Defendants, including representations and warranties regarding the Crème Claims.

11.     After using the Product, Ms. Talbot experienced irritation and burning around her eyes.  Had Ms. Talbot been aware of these possible side effects before purchasing the Product, she would not have purchased or used the product.  However, Ms. Talbot remains interested in

1    purchasing a safe eye crème and would consider the Product in the future if Defendants removed

2    any allergenic ingredients.

3         12.    Defendant Kendo Holdings, Inc. is a Delaware corporation with its headquarters at

4    425 Market St, 19th Floor, San Francisco, CA 94105.  Kendo manufactures, sells, and globally

5    distributes cosmetic products nationwide, and is responsible for the advertising, marketing, and

6    packaging of OLEHENRISKEN branded products, including OLEHENRIKSEN Banana Bright

7    Eye Crème.  Kendo, together with Ole Henriksen, manufactured, marketed, and sold the Product

8    during the class period.  The planning and execution of the advertising, marketing, labeling,

9    packaging, and corporate operations concerning the Product and the Crème Claims was primarily

10   carried out at the Kendo office within California.

11        13.    Defendant Ole Henrisken of Denmark, Inc. is a Delaware corporation with its

12   headquarters at 425 Market St, 19th Floor, San Francisco, CA 94105.  Ole Henriksen manufactures,

13   sells, and globally distributes cosmetic products nationwide, and is responsible for the advertising,

14   marketing, and packaging of OLEHENRISKEN branded products, including OLEHENRIKSEN

15   Banana Bright Eye Crème.  Ole Henriksen, together with Kendo, manufactured, marketed, and sold

16   the Product during the class period.  The planning and execution of the advertising, marketing,

17   labeling, packaging, and corporate operations concerning the Product and the Crème Claims was

18   primarily carried out at the Ole Henriksen office within California.

19        14.    Based on information and belief, Kendo dominates and controls all aspects of Ole

20   Henriksen's operations.  For example, Kendo claims Ole Henriksen as one of its brands.

21   Additionally, Kendo and Ole Henriksen share a principal office space at 425 Market St, 19th Floor,

22   San Francisco, CA 94105.  Kendo and Ole Henriksen both list David Sulitenau as their Chief

23   Executive Officer, Sierra Brandis as their Secretary, and Walter Fischer as their Chief Financial

24   Officer.  Since each Defendant acted jointly to perpetrate the acts described herein, they are thus

25   subject to joint and several liability.  At all times relevant to the allegations in this matter, each

26   Defendant acted in concert with, with knowledge and approval of, and/or as the agent of the other

27   Defendant within the course and scope of agency, regarding the acts and omissions alleged.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURISDICTION AND VENUE**

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and a least one member of the proposed class is a citizen of a state different from Defendants.

16.     This Court has personal jurisdiction over Defendants because they have continuous and systematic contacts with the State of California as to essentially render them "at home" in this State, and Defendants' principal places of business are located in this State.  Moreover, Defendants have purposefully availed themselves of the laws and benefits of doing business in this State, and Plaintiffs' claims arise out of the Defendants' forum-related activities.  Furthermore, a substantial portion of the events giving rise to Plaintiffs' claims occurred in this State, including Plaintiff Key's purchase of the Product.

17.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.  Defendants maintain their principal place of business in this District and Plaintiff Key resides in this District and purchased her Product in this District.

**COMMON FACTUAL ALLEGATIONS**

18.     Unlike prescription drugs, cosmetics may be marketed and labeled in the United States without FDA approval.  However, Defendants are still required to comport with applicable state and federal laws relating to consumer protection.  Under these laws, Defendants are required to disclose material facts to consumers who may purchase the Product, including the side effects associated with the Product.

19.     Defendants claim that the Product "can be applied to the entire eye area."  However, this statement is misleading because numerous consumers have reported adverse side effects when using the Product according to the directions provided with the packaging.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    OLEHENRIKSEN Banana Bright's Side Effects

20.    As early as 2018, consumers began reporting that they experienced side effects when using the Product as directed.  Consumers reported side effects such as itching, stinging, burning, redness, swelling, and hives when they used the Product.

21.    Some consumers have even posted images of the side effects to Defendants' website:

 

 



1

2

22.     Defendants do not provide any disclosures regarding potential side effects resulting

from use of the Product on the packaging:









23.     On the physical container of the Product, there are also no warnings regarding the

side effects:

 

24.     On the inside pamphlet of the Product, there are no warnings regarding side effects

whatsoever.  The pamphlet inside the Products lists instructions for using the Product: "Directions:

Apply to entire eye area.  Provides a beautiful base for makeup.  For external use only.  Use as

directed."  The same sparse instructions are repeated in 17 languages:



25.      On Defendants' website, there are no disclosures of the serious and potentially harmful side effects associated with the Product.  Defendants simply reiterate the information disclosed on the Product packaging.[1]

26.      Similarly, on Sephora's website, where Plaintiff Talbot purchased the Product, and in the Sephora store, where Plaintiffs Spollen and Key purchased the Product, there are no disclosures of the serious and potentially harmful side effects associated with the Product.[2]

27.      Instead of disclosing the serious and potential harmful side effects associate with its Products, Defendants marketed and advertised the Product as an "Eye Crème" that would "[b]righten[ ], firm[ ], improve[ ] concealer wear and instantly reduce[ ] … fine lines and wrinkles[.]" and "[p]rovide[ ] a beautiful base for makeup."[3]

### How to Use

Apply to entire eye area. Provides a beautiful base for makeup. For external use only. Use as directed.

## Banana Bright™ Eye Crème

Brightens, firms, improves concealer wear and instantly reduces look of fine lines and wrinkles.

28.      Consumers are entitled to make knowing and intelligent decisions about the products they purchase.  As common-sense dictates, Defendants' material omissions are deceptive marketing practices designed to retain as much profits from unknowing consumers as possible.

---

[1] https://www.olehenriksen.com/shop-skincare/banana-bright-eye-creme/OH50048.html?dwvar_OH50048_size=0.50oz (last accessed June 15, 2020).
[2] https://www.sephora.com/product/banana-bright-eye-creme-P426339 (last accessed June 15, 2020).
[3] https://www.olehenriksen.com/shop-skincare/banana-bright-eye-creme/OH50048.html?dwvar_OH50048_size=0.50oz (last accessed June 15, 2020).

29.     Defendants' failure to disclose the potential side effects of the Product has deprived Plaintiffs and all consumers of the information they needed, and deserved to make an informed decision about whether to purchase the Product.

30.     Defendants' complete omission of the potential side effects associated with the Product on the outside of the Product's packaging and inside pamphlet is deceptive, misleading, and unlawful.  It fails to warn individuals of the adverse side effects associated with the Product.  A reasonable consumer would not know, based on the information provided by Defendant, about the actual severity of any adverse side effects and would reasonably conclude that the product was safe and non-irritating.

31.     The adverse side effects that Plaintiffs, and other consumers, experienced were not adequately disclosed.

## II.      Defendants' Pre-Sale Knowledge Of The Side Effects

32.     Consumers who used the Product and were not warned about the adverse side effects before purchasing and/or using the Product have complained on Defendants' own website, as well as other retailers' websites.

33.     Defendants have known about the side effects associated with the Product for a minimum of two years, as evidenced by numerous complaints concerning the Product's side effects on Defendants' own website.  Below is a small sample of the Product's reviews/complaints posted on Defendants' website olehenriksen.com:

★★★★★ · 2 years ago
REALLY WAS HOPING I FOUND THE PERFECT EYE CREAM
So within a few hours of putting on this product my eyes started itching and became very swollen. Guess I'm one of the few that had an allergic reaction. Bummer I was hoping to love this after all the great reviews. Now to try all the other products I purchased.

🏷 My skin concern is:  Redness,  Wrinkles,  Dryness,  Anti-Aging

★★★★★ · 2 years ago
BURNS & CAUSED BUMPS ON MY UNDER EYE
I wasn't able to use this product enough to know if it has a positive affect on fine lines & dark circles. I had to stop after 4 uses because it would burn on my skin until the product dried! I thought that maybe I was applying too much but after the 4th use I noticed a break out of bumps on my under eyes. My skin has never really been too sensitive before but something in this product doesn't agree with my skin and I'm not sure what it would be. My friend has this product and it works great for her! I just don't think it's friendly to all skin types.

---

1

2 ★★★★★ · a month ago
**WORST EYE CREAM EVER**

3 After the first day of use, i got dry under my eyes and got small bumps. I used it 2 times more the following days. But now i have a red infected bump on my eyelid and it's swollen. And I am extremely dry under my eyes, with many more tiny bumps.

I really had high hopes for this product. It was really expensive, and now wasted after only using it for 3 days.

4 ★★★★★ · 9 months ago
**NOT FOR ME AT ALL - RASH**

5

6 I heard nothing but amazing things about this product, so I bought it in the mini pack at Sephora to try it out. I really like the Truth Serum, but this eye cream is NOT for me. First of all, the product separated within only a MONTH of opening it. developed a rash under my right eye that started spreading. It's sore and a little itchy. I stopped using this cream (it was the only new addition to my routine so I know it was the culprit) hopefully soon this inflammation will go away. saw other reviews with similar situations to mine.

7

8 ★★★★★ · 2 months ago
**HORRIBLE REACTION!**

9 I purchased this eye cream around a month ago and I was really enjoying it. All of a sudden the last couple of days my eyes, specifically my eyelids have become red, itchy and flaky and now look droopy. I would have no idea it was the cause of this product if I didn't see the reviews! I am very disappointed and wish I didn't purchase this product. DO NOT BUY.

10

11 ★★★★★ · 6 months ago
**DO NOT BUY - SEVERE ALLERGIC REACTION!!!**

12 I never knew that a skin product would effect me this severely, but this one did. And I'm upset that this reaction has happened the day before the holiday season starts. I had to buy glasses to disguise myself - I look like a completely different person. I need to find out what ingredient has cause this reaction.

13 It's bad y'all! My eyes won't stop itching and burning, even with cortisone and Vaseline. The skin surrounding my eyes a red with small pimple-like dots around it. It's soooooo uncomfortable & I don't know how long this is going to last or hen things will clear up.

14 I'm very disappointed in this product & even the employees at Sephora talked me into buying it. This product has ruined the start of my holiday season! Please take this product off the market.

15

16

17          34.     Similar reviews can be found on Defendants' authorized retailer's website,

sephora.com:

18

19 I tested this product out on 3 separate occasions. Each morning I'd wake up with red, puffy, and swollen eyes. Took me awhile to realize it was this product causing my skin to react this way. Definitely do not recommend for sensitive skin.

20

21

22 ★☆☆☆☆                                                                                    21 Mar 2018

23 **Made my under eye area and eyelids puffy!**

Made my under eye area and eyelids even worse! After using this product for 3 to 4 days, I noticed puffiness under my eyes and on my eyelids. Also, I discovered a weird bump under my skin in the outer corner of my eye. I've never had anything like this before!!! What was it? It went away eventually, but it was so strange! Plus, I don't really have dark circles and it didn't brighten up my under eye area at all! Stopped using it!

24

25

26

27

28

 ☆☆☆☆                                                          8 May 2018

**Caused breakouts**

I really wanted to love this as they do have a good line. However after using this for about 2 weeks I
started getting raised bumps under my eyes. They were red and very itchy and sensitive. Make up
wouldn't even cover them. Very disappointed as I loved the fresh scent and how smooth it went on my
skin. It also made wrinkles to appear moreso.

★☆☆☆☆                                                          27 Aug 2019

I never write reviews on products and I never react to products but I am so upset with this eye cream
because it has ruined the skin under my eyes. I had a horrible reaction and looked like I got punched in
the eyes after using it a few times. It has been about a month now since I stopped using this product
but my eyes still aren't the same as they were before. Every time I put concealer on now it creases and
looks horrible and I've never had that problem before.

35.     Defendants also would have had notice of the side effects as a result of product

returns, replacements, or requests for refunds.

36.     Defendants also had notice as of January 2020.  In January 2020, the anonymous

beauty collective Estee Laundry reported that numerous consumers were experiencing the side

effects described herein.  As a result of Estee Laundry's reporting, a representative from

Defendants stated they were "actively looking into these reviews:"



1

2      37.    Like most companies who offer customers an opportunity to post reviews on their

3  websites, Defendants regularly monitor online customer reviews because they provide valuable

4  data regarding quality control issues, customer satisfaction, and marketing analytics.  Regularly

5  and thoroughly monitoring reviews is also standard business practice for managing the company's

6  online reputation.  And, like most companies, Defendants pay particular attention to poor and/or

7  negative reviews like those copied above, because extreme reviews are sometimes the result of

8  extreme problems, and Defendants are sensitive to the reputational impact of negative online

9  reviews.  As a result of this policy, Defendants' management was aware of the above-referenced

10  complaints shortly after each complaint was posted.

11      38.    Defendants' management pays close attention when customers make similar

12  complaints about a product, because that indicates the complaints are not the result of user error or

13  an anomalous incident, but instead a systemic problem with the product.  Defendants also know

14  that when there are many similar complaints from customers, then it is often the case that for every

15  person who complains about problems with the product, there are other people who experience the

16  same problems, but who did not complain.  Here, the reports and complaints from consumers were

17  similar enough and numerous enough to put Defendants on notice that the incidents described were

18  the result of failing to disclose serious and harmful side effects and risks associated with use of the

19  Product.

20      39.    In short, by 2018 at the latest, information from customer complaints and returns to

21  Defendants, negative reviews on Defendants' website and negative reviews on the website of

22  retailers, whether alone or in aggregate, would have put Defendants on notice of the side effects

23  caused by their Product.

24      40.    The failure to disclose the serious and potentially harmful side effects described

25  herein is a material omission which Defendants had exclusive knowledge of and which was not

26  known to Plaintiffs or Class Members.

27      41.    Defendants made partial representations to Plaintiffs and Class Members while

28  suppressing the serious and potentially harmful side effects associated with use of the Product.

Specifically, by displaying the Product and describing its features and use, the product packaging implied that the Product has no serious or potentially harmful side effects, without disclosing that the Product did indeed have serious or potentially harmful side effects because they cause severe irritation such as redness, itching, hives, and swelling.

42.     As a result of Defendants' actions, Plaintiffs and Class Members have suffered injuries in fact, have been damaged, and have suffered a loss of money or property for having paid more money than they otherwise would have for the Product.

## CLASS REPRESENTATION ALLEGATIONS

43.     Plaintiffs seek to represent a class defined as all persons in the United States who purchased the Product (the "Class").  Excluded from the Class are persons who made such purchases for purpose of resale.

44.     Plaintiff Key also seeks to represent a subclass of all Class Members who purchased the Products in the State of California (the "California Subclass").  Excluded from the Class are persons who made such purchases for purpose of resale.

45.     Plaintiff Spollen also seeks to represent a subclass of all Class Members who purchased the Products in the State of New Jersey (the "New Jersey Subclass").  Excluded from the Class are persons who made such purchases for purpose of resale.

46.     Plaintiff Talbot also seeks to represent a subclass of all Class Members who purchased the Products in the State of New York (the "New York Subclass").  Excluded from the Class are persons who made such purchases for purpose of resale.

47.     Subject to additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

48.     At this time, Plaintiffs do not know the exact number of members of the aforementioned Class and Subclasses ("Class Members," "California Subclass Members," "New Jersey Subclass Members, and "New York Subclass Members," respectively); however, given the nature of the claims and the number of retail stores in the United States selling Defendants'

1    Product, Plaintiffs believe that Class and Subclass Members are so numerous that joinder of all

2    members is impracticable.

3           49.     There is a well-defined community of interest in the questions of law and fact

4    involved in this case.  Questions of law and fact common to the Class Members that predominate

5    over questions that may affect individual Class Members include:

6                  a)     Whether Defendants misrepresented and/or failed to disclose material facts

7    concerning the Product;

8                  b)     Whether Defendants' conduct was unfair and/or deceptive;

9                  c)     Whether Defendants have been unjustly enriched as a result of the unlawful

10   conduct alleged in this Complaint such that it would be inequitable for Defendants to retain the

11   benefits conferred upon Defendants by Plaintiffs and the Class;

12                 d)     Whether Plaintiffs and the Class sustained damages with respect to the

13   common law claims asserted, and if so, the proper measure of their damages.

14          50.     With respect to the California Subclass, additional questions of law and fact

15   common to the members that predominate over questions that may affect individual members

16   include whether *Defendants* violated California's Consumer Legal Remedies Act, Unfair

17   Competition Law and False Advertising Law.

18          51.     With respect to the New Jersey Subclass, additional questions of law and fact

19   common to the members that predominate over questions that may affect individual members

20   include whether *Defendants* violated New Jersey's Consumer Fraud Act.

21          52.     With respect to the New York Subclass, additional questions of law and fact

22   common to the members that predominate over questions that may affect individual members

23   include whether *Defendants* violated New York General Business Laws § 349 and § 350.

24          53.     Plaintiffs' claims are typical of those of the Class because Plaintiffs, like all Class

25   Members, purchased, in a typical consumer setting, Defendants' Product, and Plaintiffs sustained

26   damages from Defendants' wrongful conduct.

27

28

---

CLASS ACTION COMPLAINT                                                                          16

54.     Plaintiffs will fairly and adequately protect the interests of the Class and Subclasses and has retained counsel that is experienced in litigating complex class actions.  Plaintiffs have no interests that conflict with those of the Class or the Subclasses.

55.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

56.     The prosecution of separate actions by members of the Class and the Subclasses would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants.  For example, one court might enjoin Defendants from performing the challenged acts, whereas another might not.  Additionally, individual actions could be dispositive of the interests of the Class and the Subclasses even where certain Class or Subclass Members are not parties to such actions.

## COUNT I
### Violation of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq.*

57.     Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

58.     Plaintiff Key brings this claim individually and on behalf of the members of the proposed Class and California Subclass against Defendants.

59.     Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."  Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

60.     Defendants violated Civil Code § 1770(a)(5), (a)(7) and (a)(9) by holding out the Product as fit for use as an eye crème, when in fact the product caused severe side effects rendering unsafe and useless.

61.    Defendants had exclusive knowledge of the defect, which was not known to Plaintiff or Class Members.

62.    Defendants made representations to Plaintiff and Class Members, while suppressing the side effects.  Specifically, by displaying the Product and describing their features, the Product's packaging implied that the Product as suitable for use as an eye crème without disclosing that the Product had serious side effects that would render the Product unsafe and useless.

63.    Defendants' concealment and omissions regarding the adverse side effects of the Products was a material omission and misstatement that would cause consumers to believe, falsely and incorrectly, that the Products were suitable for use as an eye crème and had no potential, risky, and serious side effects.

64.    Plaintiff and Class Members have suffered harm as a result of these violations of the CLRA because they have incurred charges and/or paid monies for the Product that they otherwise would not have incurred or paid.

65.    On June 9, 2020, prior to the filing of this Complaint, Plaintiff' counsel sent Defendants a CLRA notice letter, which complies in all respects with California Civil Code §1782(a).  The letter also provided notice of breach of express and implied warranties.  The letter was sent via certified mail, return receipt requested, advising Defendants that they were in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of Plaintiffs and all other similarly situated purchasers.  A true and correct copy of Plaintiffs' letter is attached hereto as **Exhibit A.**

66.    Plaintiff Key and the Class Members seek compensatory damages, punitive damages, injunctive relief, attorneys' fees, and restitution of any ill-gotten gains due to Defendants' acts and practices in violation of the CLRA.

<u>**COUNT II**</u>
**Violation of California's Unfair Competition Law ("UCL"),**
**California Bus. & Prof. Code §§ 17200**

67.    Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

68.     Plaintiff Key brings this claim individually and on behalf of the members of the proposed Class and California Subclass against Defendants.

69.     By committing the acts and practices alleged herein, Defendants have violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the California Subclass, by engaging in unlawful, fraudulent, and unfair conduct.

70.     Defendants have violated the UCL's proscription against engaging in unlawful conduct as a result of its violations of the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7) and (a)(9) as alleged above.

71.     Defendants' acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

72.     As more fully described above, Defendants' misleading marketing, advertising, packaging, and labeling of the Products are likely to deceive reasonable consumers.

73.     Defendants' acts and practices described above also violate the UCL's proscription against engaging in unfair conduct.

74.     Plaintiff and the other Class Members suffered a substantial injury by virtue of buying the Product that they would not have purchased absent Defendants' unlawful, fraudulent, and unfair marketing, advertising, packaging, and omission about the defective nature of the Product, or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled product.

75.     There is no benefit to consumers or competition from deceptively marketing and omitting material facts about the defective nature of the Product.

76.     Plaintiff and the other Class Members had no way of reasonably knowing that the Product they purchased were not as marketed, advertised, packaged, or labeled.  Thus, they could not have reasonably avoided the injury each of them suffered.

77.     The gravity of the consequences of Defendants' conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous,

offends established public policy, or is substantially injurious to Plaintiff and the California Subclass Members.

78.     Pursuant to California Business and Professional Code § 17203, Plaintiff and the California Subclass seek an order of this Court that includes, but is not limited to, an order requiring Defendants to: (a) provide restitution to Plaintiff and the other California Subclass members; (b) disgorge all revenues obtained as a result of violations of the UCL; (c) pay Plaintiff's and the California Subclass' attorney's fees and costs.

**COUNT III**
**Violation of California's False Advertising Law ("FAL"),**
**California Bus. & Prof. Code §§ 17500 *et seq.***

79.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

80.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and California Subclass.

81.     Defendants violated Business & Professions Code § 17500 by publicly disseminating false, misleading, and deceptive advertisements regarding their Product by failing to disclose material facts to consumers about the existence and severity of symptoms and adverse side effects associated with using the Product.

82.     Defendants' false and misleading advertisements were disseminated to increase the sale of their Product.

83.     Defendants should have known and did actually know that their advertisements for the Product were false, misleading, and deceptive because they  knew about the existence and severity of symptoms associated with using the Product and failed to disclose them.  Defendants knew their advertisements would induce consumers to purchase the Product.

84.     Plaintiff Key and members of the Class and California Subclass have suffered harm as a result of these violations of the FAL because they have incurred charges and/or paid monies for a Product that they otherwise would not have incurred or paid.

### COUNT IV
**Unjust Enrichment**

85.     Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

86.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclasses against Defendants.

87.     Plaintiffs and Class Members conferred benefits on Defendants by purchasing the Product.

88.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs and Class Members' purchases of the Product.  Retention of those moneys under these circumstances is unjust and inequitable because Defendants failed to disclose that the as were unfit for use as an eye crème.   These omissions caused injuries to Plaintiffs and Class Members because they would not have purchased the Product if the true facts were known.

89.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and Class Members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and Class Members for its unjust enrichment, as ordered by the Court.

### COUNT V
**Breach of Implied Warranty of Merchantability**

90.     Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

91.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclasses against Defendants.

92.     Defendant, as the designers, manufacturers, marketers, distributors, and/or sellers, impliedly warranted that the Product was, in fact, fit for its intended purpose.

93.     Defendants breached the warranty implied in the contract for the sale of the Product because it could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose because the Products were unsafe, rendering them unusable.  As a result, Plaintiffs and the Class Members did not receive the goods as impliedly warranted by Defendants to be merchantable.

---

94.     Plaintiffs and Class Members purchased the Product in reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose.

95.     The Product was not altered by Plaintiffs or the Class Members.

96.     The Products were unsafe when they left the exclusive control of Defendants.

97.     Defendants knew that the Product would be purchased and used without additional testing by Plaintiffs and the Class Members.

98.     The Product was unsafe and unfit for its intended purpose, and Plaintiffs and the Class Members did not receive the goods as warranted.

99.     Defendants sell the Product through a network of authorized retailers, including Sephora.  Defendants have entered into various contractual agreements with its dealers.  The dealers were not the intended beneficiaries of the warranties associated with the Product.  Plaintiffs and Class members were the intended beneficiaries of the warranties associated with the Product.

100.    As a direct and proximate case of Defendants' breach of the implied warranty, Plaintiffs and the Class Members have been injured and harmed because they would not have purchased the Product if they knew the truth about the Product and the Product they received was worth substantially less than the Product they were promised and expected.

## **<u>COUNT VI</u>**
### **Violation of New York General Business Law § 349**

101.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

102.    Plaintiff Talbot brings this claim individually and on behalf of the Members of the proposed New York Subclass against Defendants.

103.    New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

104.    In its sale of goods throughout the State of New York, Defendants conduct business and trade within the meaning and intendment of New York's General Business Law § 349.

105.    Plaintiff Talbot and Members of the New York Subclass are consumers who purchased products from Defendants for their personal use.

106.    By the acts and conduct alleged herein, Defendants have engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, omitting the side effects associated with use of the Product.

107.    The foregoing deceptive acts and practices were directed at consumers.

108.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent and omit characteristics of the Product to induce consumers to purchase same.

109.    By reason of this conduct, Defendants engaged in deceptive conduct in violation of New York's General Business Law.

110.    Defendants' actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff Talbot and Members of the New York Subclass have sustained from having paid for and used Defendants' Product.

111.    As a result of Defendants' violations, Plaintiff Talbot and Members of the New York Subclass have suffered damages because: (a) they would not have purchased the Product on the same terms if the true facts were known about the product; (b) they paid a price premium for the Product due to Defendants' promises that it would function as an eye crème ; and (c) the Product did not have the characteristics as promised by Defendants.

112.    On behalf of herself and other Members of the New York Subclass, Plaintiff Talbot seeks to recover her actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

### COUNT VII
### Violation of New York General Business Law § 350

113.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

114.    Plaintiff Talbot brings this claim individually and on behalf of the Members of the proposed New York Subclass against Defendants.

115.    New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

116.    Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

117.    Based on the foregoing, Defendants have engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of New York's General Business Law.

118.    Defendants' false, misleading, and deceptive statements and representations of fact were and are directed to consumers.

119.    Defendants' false, misleading, and deceptive statements and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

120.    Defendants' false, misleading, and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

121.    As a result of Defendants' false, misleading, and deceptive statements and representation of fact, Plaintiff Talbot and the New York Subclass have suffered and continue to suffer economic injury.

122.    As a result of Defendants' violations, Plaintiff Talbot and Members of the New York Subclass have suffered damages due to said violation because: (a) they would not have purchased the Product on the same terms if the true facts were known about the product; (b) they paid a price premium for the Product due to Defendants' promises that it would function as an eye crème ; and (c) the Product did not have the characteristics as promised by Defendants.

123.    On behalf of herself and other Members of the New York Subclass, Plaintiff Talbot seeks to recover her actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT VIII
### Violation of New Jersey's Consumer Fraud Act.
### N.J.S.A. § 56:8-*1 et seq.*

124.    Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

125.    Plaintiff Spollen brings this claim individually and on behalf of the members of the proposed Class and New Jersey Subclass against Defendants.

126.    Plaintiff and Class Members have suffered an injury in fact and lost money or property as a result of Defendants' violations of New Jersey's Consumer Fraud Act ("NJCFA").

127.    The NJCFA protects consumers from "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . . ." N.J. Stat. Ann. § 56:8-2.

128.    Plaintiff and Class Members are consumers who purchased the Product for personal, family or household use.

129.    Defendants engaged in unlawful conduct by deliberately and knowingly engaging in misrepresentations, false statements, and omissions regarding the Product in the course of Defendants' business.  Specifically, Defendants knew or should have known that the Product caused serious and potentially harmful side effects when used as directed.  However, Defendants failed to disclose these side effects to Plaintiff Spollen and Class Members at the time of purchase.

130.    Defendants have also engaged in unlawful conduct by willfully and knowingly suppressing and/or omitting information related to the Product to consumers.  Specifically, Defendants purposefully and knowingly failed to disclose the serious and potentially harmful side effects to consumers such as Plaintiff Spollen and the Class Members to secure the sale of the Product at a premium price.

131.    Defendants did not disclose to their customers the true nature of the Product side effects, nor was this readily discoverable at the time of purchase.

132.    Defendants intended that Plaintiff and the Class Members rely on their misrepresentation and/or acts of concealment and omissions, so that they would purchase the Product.

133.    Accordingly, Defendants have engaged in unfair and deceptive trade practices, including representing that the Product has characteristics, uses, benefits, and qualities which it does not have, representing that the Product is of a particular standard and quality when it is not, advertising the Product with the intent not to sell it as advertised, and otherwise engaging in conduct likely to deceive.  Further, Defendants' acts and practices described herein offend

established public policy because of the harm they cause to consumers outweighs any benefit associated with such practices, and because Defendants concealed the side effects of the Product from consumers.

134.   Defendants' actions as set forth above occurred in the conduct of trade or commerce.

135.   By engaging in the above-described practice and the actions and omissions herein alleged, Defendants have committed one or more unlawful acts in violation of the NJFCA.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendants, as follows:

A.   For an order certifying the Class and California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff Key as representative of the Class and California Subclass and Plaintiffs' attorneys as Class Counsel to represent the Class and California Subclass members; For an order certifying the Class and New Jersey Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff Spollen representative of the Class and New Jersey Subclass and Plaintiffs' attorneys as Class Counsel to represent the Class and New Jersey Subclass members; For an order certifying the Class and New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff Talbot representative of the Class and New York Subclass and Plaintiffs' attorneys as Class Counsel to represent the Class and New York Subclass members;

B.   For an order declaring the Defendants' conduct violates the statues referenced herein;

C.   For an order finding in favor of Plaintiffs, the Class, and the Subclasses on all counts asserted herein;

D.   For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

E.   For pre-judgment interest on all amounts awarded;

F.      For an order of restitution and all other forms of monetary relief;

G.      For an order awarding Plaintiffs and the Class and Subclasses their reasonable

attorneys' fees and expenses and costs of suit.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs demand a trial by jury of all issues so triable.

Dated:  August 25, 2020            **BURSOR & FISHER, P.A.**

By:_____*/s/ Brittany S. Scott*_____
                Brittany S. Scott

L. Timothy Fisher (State Bar No. 191626)
Brittany S. Scott (State Bar No. 327132)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
            bscott@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
701 Brickell Ave., Suite 1420
Miami, FL 33133
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
E-Mail: scott@bursor.com

*Attorneys for Plaintiffs*

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, Brittany S. Scott, declare as follows:

      1.    I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am an associate at Bursor & Fisher, P.A., counsel of record for Plaintiff in this action.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

      2.    The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of California.

      I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California this 25th day of August, 2020.

*/s/ Brittany S. Scott*
Brittany S. Scott

**EXHIBIT A**

# BURSOR&FISHER
### P.A.

**1990 N. CALIFORNIA BLVD.**
**SUITE 940**
**WALNUT CREEK, CA 94596**
**www.bursor.com**

**BRITTANY S. SCOTT**
Tel: **925.300.4455**
Fax: **925.407.2700**
**bscott@bursor.com**

June 9, 2020

*Via Certified Mail - Return Receipt Requested*

Ole Henriksen of Denmark, Inc.
c/o CSC – Lawyers Incorporating Service
251 Little Falls Drive
Wilmington DE 19808

Kendo Holdings Inc.
c/o CSC – Lawyers Incorporating Service
251 Little Falls Drive
Wilmington DE 19808

Re:     *Notice and Demand Letter Pursuant to U.C.C. §§ 2-313, 2-314, 2-607;*
        *the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.; New York General*
        *Business Law §§ 349-50; New Jersey's Consumer Fraud Act, N.J.S.A § 56:8-1, et seq.,*
        *and California's Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, et seq.; and*
        *all other applicable consumer protection statutes*

To Whom it May Concern:

        This letter serves as a preliminary notice and demand for corrective action by Kendo
Holdings, Inc. ("Kendo") and Ole Henriksen of Denmark, Inc.  ("Ole Henriksen"), pursuant to
U.C.C. § 2-607(3)(a) concerning breaches of express and implied warranties on behalf of our
clients, Andrea J. Key, Anne Spollen, and Anne F. S. Talbot, and a class of all similarly situated
purchasers of Ole Henriksen's Banana Bright Eye Crème (the "Product").  This letter also serves
as notice of violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*; New
York General Business Law §§ 349-50; New Jersey's Consumer Fraud Act, N.J.S.A § 56:8-1*, et
seq.;* and California's Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq.*,
including subsections 1770(a)(5), (7), and (9), and all other applicable federal and state laws.
Should we not receive a response to our offer of resolution set forth below, this letter provides
statutory notice of our intent to file a class action lawsuit.

        You have participated in the marketing and sale of Ole Henriksen's Banana Bright Eye
Crème.  However, as You are already aware, the Product suffers from a design defect which
causes consumers to experience allergic reactions, such as hives, redness, itching, and swelling,
therefore rendering the Products useless.

        Our clients purchased the Product, which Kendo and Ole Henriksen repeatedly
misrepresented and warranted that the Product was an "eye crème"  Our clients understood this

to mean that their Products would be suitable for use as an eye crème.  However, the Product is not suitable for use as an eye crème because it cases allergic reactions as described above.  The defect is therefore contrary to Your express representations, as the Product is not suitable for use as an eye crème because it causes redness and skin irritation.  Accordingly, You violated the California CLRA, New York GBL, New Jersey Consumer Fraud Act, and breached express and implied warranties made to our clients and the Class.  *See* U.C.C. §§ 2-313, 2-314, 2-607; 15 U.S.C. §§ 2301, *et seq.*; New York General Business Law §§ 349-50; N.J.S.A. § 56:8-1, *et seq.*; and California Civil Code §§ 1750, *et seq.*  Our clients and similarly situated consumers were injured and damaged by purchasing the Product.

On behalf of our clients and the Class, we hereby demand that Kendo and Ole Henriksen immediately (1) issue a mandatory recall of the Product and (2) make full restitution to all purchasers of the Product of all purchase money obtained from sales thereof.

We also demand that Kendo and Ole Henriksen preserve all documents and other evidence which refer or relate to any of the above-described practices during the applicable class periods, including electronically stored information and including, but not limited to, the following:

1. All documents concerning the formulation, ingredient sourcing, packaging, labeling, and manufacturing process for the Product;

2. All documents concerning the pricing, advertising, marketing, and/or sale of the Product;

3. All communications with customers involving complaints or comments concerning the Product;

4. All documents concerning communications with any retailer involved in the marketing or sale of the Product;

5. All documents concerning communications with any suppliers involved in the manufacturing or sale of the Product; and

6. All documents concerning the total revenue derived from sales of the Product.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

**BURSOR**&**FISHER**
P.A.

Please contact me right away if you wish to discuss an appropriate way to remedy this matter.  If I do not hear from you promptly, I will take this as an indication that you are not interested in discussing this offer of resolution.

Very truly yours,

Brittany S. Scott